NOT DESIGNATED FOR PUBLICATION

No. 129,778

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of I.W.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Rawlins District Court; KEVIN BERENS, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Laura E. Poschen*, of Poschen Law, LLC, of Wichita, for appellant.

No appearance by appellee.

Before WARNER, C.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: C.W. appeals the order of the Rawlins County District Court terminating his right to parent his daughter, I.W. On appeal, C.W. contends the county attorney's motion for termination failed to provide him with adequate notice and, therefore, deprived him of constitutionally required due process. He further contends the county attorney submitted insufficient evidence at the termination hearing to support the district court's conclusion. We find neither ground warrants relief and thus affirm the termination order.

At the outset, we point out that we have been handicapped in reviewing this case because the county attorney declined to file an appellate brief, short-circuiting the adversarial process typically informing judicial decision-making. See *United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ("'The very premise

1

of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.'") (quoting *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 [1975]); *State v. Cooper*, 48 Kan. App. 2d 671, 673, 301 P.3d 331 (2013) ("The adversarial system rests, in part, on the notion that competing arguments from opposing sides will define and clarify the court's resolution of the dispute."). Even if we viewed the county attorney's declination as a form of acquiescence in C.W.'s arguments—and we don't—we retain the authority to look past such a position. *State v. Brown*, 322 Kan. ___, 591 P.3d 141, 143 (Kan. 2026); see *Hanrahan v. Horn*, 232 Kan. 531, 535, 657 P.2d 561 (1983) (recognizing "a court is not bound by agreements and admissions of the parties as to matters of law or legal conclusions"). We exercise that authority here because the termination of parental rights requires the resolution of the State's strong parens patriae interest in the welfare of children within its borders and a parent's fundamental liberty interest embodied in their relationship with their child. See K.S.A. 38-2201(b) (identifying public policies protected in Revised Kansas Code for Care of Children, including "safety and welfare of a child to be paramount in all proceedings"); *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (parent has constitutionally protected liberty interest in care and custody of their child).

FACTUAL AND PROCEDURAL HISTORY

In early January 2024, Atwood police officers went to C.W.'s residence in response to a check-the-welfare call. They found C.W. intoxicated and passed out. He appeared to have been in a fight. I.W., who was then about four years old, was carrying around a loaded pistol with a trigger lock. The officers took I.W. into protective custody and had C.W. transported to the hospital, where he was diagnosed with a broken jaw.

No one else resided with C.W. and I.W. The county attorney's office filed a child in need of care action and obtained an emergency order placing I.W. in the custody of the

Department for Children and Families (DCF). I.W.'s mother apparently abandoned her shortly after she was born and has never been part of the immediate family unit. The district court adjudicated I.W. to be a child in need of care, and DCF brought in Saint Francis Ministries, a private social service agency, to develop a plan to reunite C.W. and I.W. in a stable family environment.

As the evidence the county attorney presented at the termination hearing in this case showed, the social service agency had been engaged in two earlier child in need of care cases in Logan County involving C.W. and I.W. The common denominator in all three cases has been C.W.'s chronic abuse of alcohol and his inability to safely parent I.W. when he becomes highly intoxicated.

In the first case, filed in 2021, C.W. was found in the home in an alcoholic stupor. I.W. was wearing a diaper overloaded with feces and urine, and the residence— particularly the kitchen—was in an unhygienic condition. I.W. was removed from the home, and C.W. completed an inpatient alcohol treatment program. I.W. was returned to C.W.'s custody about eight months later.

The second case was filed in August 2022 after C.W. was again found drunk and passed out in the home. I.W. appeared to have suffered an injury to her nose she indicated C.W. caused, although he has consistently denied harming the child. C.W. sought alcohol abuse counseling, and I.W. was returned to his custody in February 2023. C.W. pleaded to and was found guilty of misdemeanor child endangerment of I.W. in a criminal case in Logan County, related to the injury of I.W.

At the termination hearing in this case, an employee of the social service agency who participated in all three child in need of care cases agreed that the foundation of each of them rested on C.W. getting "too drunk to be able to care for" I.W.

3

Early in this case, C.W. completed an inpatient alcohol treatment program with a different provider and began—but did not complete—a recommended regimen of outpatient follow-up care. The Rawlins county attorney charged C.W. with felony child endangerment based on the factual circumstances here—I.W. having gotten ahold of a loaded pistol. C.W. entered a plea, was found guilty of misdemeanor child endangerment, and was placed on probation.

Between drug testing in this case and as part of his probation in the criminal case, C.W. tested positive for alcohol, THC as the active ingredient in marijuana, and methamphetamine. C.W. admitted using alcohol and explained that he was self-medicating with marijuana and an over-the-counter liquid sleep aid to combat insomnia. He denied intentionally using methamphetamine and suggested some of the marijuana might have been laced with the drug.

C.W. was arrested in September 2024 on a domestic battery charge. The victim was a woman with whom he then shared a residence. While in jail on that charge and the probation violation warrant, C.W. lost his residence. After he was released from custody, he moved to Nebraska. The record evidence on his circumstances in late 2024 and leading up to the termination hearing in August 2025 is spotty. C.W. and his brother apparently were living in "a camper" on a farm owned by their joint employer. The employer testified at the termination hearing and said C.W. worked for his construction company and was paid in cash, so he did not receive paystubs. The employer was never asked how much C.W. earned or how steady the construction work had been. Nobody offered a more detailed description of the camper, although C.W. at least suggested he would seek different housing if reunited with I.W.

The social service agency never verified C.W.'s employment in Nebraska and did not inspect his housing there. During the termination hearing, representatives of the social service agency agreed they could have asked the Nebraska equivalent of DCF to conduct

4

a home study of C.W., including an evaluation of his residence. The process is involved and time consuming. They did not make the request because they concluded C.W. had not made substantial progress toward family reunification, especially given his ongoing use of alcohol and marijuana and his failure to engage in continuing outpatient counseling and because C.W. did not own, rent, or otherwise have a recognized legal interest in what appeared to be a suitable home in Nebraska. C.W.'s at-will residence in a camper belonging to his employer fell short.

C.W. had regular supervised visits with I.W. before the termination hearing. Initially, they met weekly. But when the case plan moved from reunification to adoption (consistent with the termination of C.W.'s parental rights), the visits dropped to monthly. The social service agency representatives testified that C.W. and I.W. had developed a recognizable, if limited, parent-child bond. But for the most part, they observed that during the visits C.W. tended to watch or supervise I.W. rather than directly engaging with her in activities. One of them noted that over the course of the three child in need of care cases, I.W. had spent more than half her life in foster placements. At the termination hearing, I.W.'s foster placement testified that they intended to take the steps necessary to adopt the child.

The county attorney's office filed a motion to terminate the parental rights of C.W. and I.W.'s mother in late December 2024. As we indicated, the district court held an evidentiary termination hearing on August 11, 2025. Mother did not appear in person, although she was represented by an appointed lawyer. Four days later, the district court filed an order terminating the parental rights of C.W. and Mother on multiple grounds of unfitness and found that those grounds were unlikely to change in the foreseeable future. The district court further concluded that I.W.'s best interests favored termination. C.W. has timely appealed the termination of his parental rights. The termination of Mother's rights is not before us.

5

In taking up C.W.'s appeal, we first set out general legal principles governing the termination of parental rights under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq. We then consider C.W.'s argument that the motion to terminate violated his constitutionally protected due process rights. Finally, we apply the general principles to C.W.'s argument that the county attorney's office failed to prove sufficient grounds to terminate his parental rights.

*Governing Legal Principles Outlined*

A person has a constitutionally recognized right to a parental relationship with their child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*, 455 U.S. 745). The right is a constitutionally protected liberty interest. See *Troxel*, 530 U.S. at 65 (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Code to establish processes for finding children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail. K.S.A. 38-2201 et seq.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the grounds outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home for an extended time, the additional factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find C.W. unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in termination of parental rights proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 697, 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests finding is governed by a less stringent standard. As directed in K.S.A. 38-2269(g)(1), the district court should give "primary consideration

to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of that discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *In re M.S.*, 56 Kan. App. 2d at 1264.

*Due Process Challenge*

Because the parent-child relationship reflects a constitutionally protected liberty interest, a parent is entitled to fair notice and an opportunity to be heard under the Due Process Clause of the Fourteenth Amendment to the United States Constitution before the State extinguishes that interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty[,] or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *State v. Gonzalez*, 57 Kan. App. 2d 618, 623, 457 P.3d 938 (2019) ("The essential principle embodied in the Due Process Clause is this:  The government may not deprive a person of a property right or a liberty interest without affording that person the opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest."). Here, C.W. does not challenge the Code's systemic due process protections that include fair notice of the grounds the State intends to rely on in seeking termination, the heightened standard of

8

proof, the right to legal representation, the right to cross-examine the State's witnesses and otherwise contest the State's evidence during the termination hearing, and the right to present countering evidence. Rather, he contends the motion to terminate his parental rights failed to adequately apprise him of what the county attorney's office intended to prove at the termination hearing. So his complaint is with the sufficiency of the motion itself.

We have recognized that a motion to terminate parental rights must be reasonably calculated to give a parent fair notice of why their rights should be terminated, so they can prepare a meaningful defense. *In re E.K.*, No. 125,688, 2023 WL 4677009, at *6-7 (Kan. App. 2023) (unpublished opinion). In turn, we have regularly held that a district court may not terminate a parent's rights on grounds that have not been identified in the motion. *In re L.X.-Y.*, No. 128,991, 2026 WL 71670, at *15 (Kan. App. 2026) (unpublished opinion); *In re E.K.*, 2023 WL 4677009, at *7. By the same token, the State does not provide adequate notice simply by listing in the motion every statutory ground for termination included in K.S.A. 38-2269(b) and (c) with little or no factual explanation. *In re M.G.*, No. 115,007, 2016 WL 4159902, at *8-9 (Kan. App. 2016) (unpublished opinion); see *In re A.C.B.*, No. 128,657, 2026 WL 412544 at *6 (Kan. App. 2026) (unpublished opinion) (recognizing rule in *In re M.G.*).

C.W. alleges a due process violation of the latter sort. He says the motion lists multiple statutory grounds for termination without any supporting factual explanation. We think C.W. has misconstrued the motion. The motion was crafted from a template or form document and, in setting forth the grounds for termination, essentially incorporates verbatim the "points of severance" that a case manager with the social service agency prepared and filed with the district court. The points-of-severance document recites all of the statutory grounds for unfitness in K.S.A. 38-2269, the presumptions in K.S.A. 38-2271, and "other factors" that may support unfitness or termination. Most of the "points" include a supporting factual narrative. But others do not. From the way the grounds are

outlined in the motion, those that have no related narrative appear to be ones the county attorney's office never intended to rely on, although that prompts a reasonable inquiry as to why they would appear in the motion at all.

We have questioned "the utility and wisdom of delegating to case managers the obligation to identify legally appropriate grounds of unfitness and to assemble a factual account tied to those legal determinations" for purposes of a motion to terminate compliant with K.S.A. 38-2266. *In re E.K.*, 2023 WL 4677009, at *8. We repeat that concern. Preparing a sound motion to terminate requires sifting the potential evidence and discerning what legal grounds that evidence will reasonably support, especially given the heightened standard of proof. Those are often intricate decisions that ought not be delegated to nonlawyers. Here, the rote recitation of the points of severance in the motion to terminate suggests insufficient attention to that obligation. The resulting motion lacks clarity and focus in outlining with particularity some of the grounds on which the county attorney's office apparently intended to rely in terminating C.W.'s parental rights.

For purposes of resolving his appeal, we give C.W. the benefit of his procedural due process argument generally and treat the motion as insufficiently detailed in some respects. But this sort of procedural due process violation is not structural, so the party claiming error must identify some prejudice. In short, any deprivation of due process here is subject to harmless error review. *In re E.K.*, 2023 WL 4677009, at *7; see *In re Henderson*, 306 Kan. 62, 76-77, 392 P.3d 56 (2017) (procedural due process claims subject to harmless error analysis). We review the due process deprivation using the standard for constitutional error requiring the State, as the party benefiting from the mistake, to show beyond a reasonable doubt the result would have been the same absent the error. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). The inquiry requires an examination of the record as a whole.

In undertaking that task, we look at the grounds the district court relied on in terminating C.W.'s parental rights and ask whether the motion to terminate provided fair notice of those grounds. In the termination order, the district court identified three applicable statutory bases for finding a parent unfit in K.S.A. 38-2269(b) and two bases in K.S.A. 38-2269(c). For reasons we discuss later, we discard the grounds in subsection (c).

We consider these grounds the district court relied on: (1) C.W.'s continuing use of alcohol and drugs rendering him unable to care for I.W. on a continuing basis, as set out in K.S.A. 38-2269(b)(3); (2) the failure of the social service agency's reasonable efforts to rehabilitate the family, as set out in K.S.A. 38-2269(b)(7); and (3) C.W.'s lack of effort to adjust his circumstances and conduct to meet I.W.'s needs, as set out in 38-2269(b)(8). The motion to terminate identified each of those grounds by statutory subsection and included a related factual narrative. The narratives for subsections (b)(3) and (b)(8) were quite detailed.

In his brief, C.W. has not identified any specific ways the motion to terminate deprived him of fair notice as to those three statutory grounds. Nor has he outlined any new or different evidence he would have presented at the termination hearing on those grounds. We conclude the motion to terminate provided C.W. with fair notice that the county attorney's office intended to prove him unfit under K.S.A. 38-2269(b)(3) and (b)(8), satisfying his right to constitutional due process. We are of a like mind as to K.S.A. 38-2269(b)(7), despite the brief factual recitation in the motion. If there were a due process error as to that ground, it would have been harmless beyond a reasonable doubt. C.W., through his lawyer, cross-examined the representatives of the social service agency at the termination hearing about what they did and didn't do to help C.W. reintegrate with I.W. and, in particular, challenged their failure to initiate a home study through the appropriate Nebraska state agency after he moved there. C.W. has not shown how his defense to those allegations of unfitness was impeded or compromised.

11

The record fails to establish a due process violation entitling C.W. to relief from the termination order. The appropriate remedy would preclude the district court from relying on a ground of unfitness not sufficiently identified in the motion to terminate, subject to a finding of harmlessness. We find no such error here.

*General Principles Applied to Termination Order*

In reviewing C.W.'s challenge to the sufficiency of the evidence supporting the termination order, we focus on the three grounds of unfitness the district court relied on under K.S.A. 38-2269(b). Here, the evidence tends to overlap and, as is often the case, the grounds are not rigidly distinct. We, therefore, examine them together.

C.W.'s unfitness revolved around his chronic abuse of alcohol to the point he often fell into stupors, leaving him unable to care for I.W. The circumstances prompting this case illustrate the problem—following a fight, C.W. drank himself into unconsciousness while I.W. found a loaded handgun he kept in the home and was carrying it around when law enforcement officers intervened. C.W. went through inpatient treatment for alcohol abuse early in this case. He failed to complete the recommended aftercare and relapsed, testing positive for alcohol and marijuana later in this case.

That pattern replicates what happened in the two earlier child in need of care cases from Logan County. C.W.'s abuse of alcohol left him unable to care for I.W., as we have outlined. The alcohol abuse treatment he received in each case didn't take on a permanent basis. In each instance, C.W. relapsed into serious alcohol abuse after a limited period of sobriety, prompting the State to again intervene to protect I.W.

At the termination hearing, the district court heard that evidence and appropriately concluded C.W. could not meet the physical and emotional needs of I.W. because of his chronic alcohol abuse. That provided a sufficient evidentiary foundation for unfitness

12

under K.S.A. 38-2269(b)(3). The social service agency had undertaken steps to arrange alcohol abuse treatment for C.W. in all three cases, including inpatient care at least twice. But the attraction of alcohol proved too strong for C.W. to resist. That history of treatment and relapse supports the district court's findings of unfitness under K.S.A. 38-2269(b)(7), reflecting the failure of reasonable efforts at family rehabilitation, and under K.S.A. 38-2269(b)(8), reflecting the failure of C.W. to adjust his circumstances to meet I.W.'s need.

Child in need of care proceedings and resulting termination orders are not fault based. That is, a parent's rights may be terminated even though the grounds for unfitness are not necessarily within their willful control, such as mental illness or chronic drug abuse, and even though they truly love their child. See *In re M.P.*, No. 119,444, 2019 WL 2398034, at *4 (Kan. App. 2019) (unpublished opinion). This appears to be such a case.

At the time of the termination hearing, C.W. apparently lived in a camper with his brother in rural Nebraska and worked on a cash basis for a construction company. The hearing record was bereft of evidence showing C.W. had suitable housing or income to care for I.W., even though his employer testified. Those are fundamental components of a reasonable family reunification plan. *In re A.M.*, No. 129,527, 2026 WL 912737, at *4 (Kan. App. 2026) (unpublished opinion). In its termination order, the district court noted that those were tasks in C.W.'s plan that had not been met.

As we have mentioned, C.W. faulted the social service agency for not requesting a home study of his circumstances in Nebraska. But at the termination hearing, agency representatives explained the home study process is time consuming and was not warranted because C.W. had failed to make significant steps toward successful family reunification, particularly maintaining sobriety, and had not secured an appropriate residence in Nebraska for purposes of a home study. The evidence supported the district court's findings of unfitness under K.S.A. 38-2269(b)(7) and (b)(8), including C.W.'s

13

failure to change circumstances by obtaining suitable housing and documented employment.

The district court also found C.W. unfit based on two grounds in K.S.A. 38-2269(c). We do not consider those findings. Unfitness under K.S.A. 38-2269(c) comes into play only after a child has been in an out-of-home placement for 15 of the immediately preceding 22 months, measured from 60 days after the child's removal from the home. K.S.A. 38-2269(b)(9). At a minimum, the timing requires that the child in need of care proceeding have been pending for two years—22 months plus the initial 60 days after the removal of the child. This case was filed in early January 2024, and the termination hearing was held in mid-August 2025, a period of 18 months total. So the district court erred in relying on unfitness grounds in K.S.A. 38-2269(c). The error is, however, harmless because we have concluded adequate evidence supported the three grounds of unfitness the district court found under K.S.A. 38-2269(b).

On appeal, C.W. has not directly argued the district court erred in finding the grounds of unfitness were unlikely to change in the foreseeable future. We briefly mention the point. C.W.'s history of alcohol abuse and his relapse after inpatient treatment in this case support the district court's conclusion that C.W. would likely revert to his dangerously abusive consumption of alcohol in the foreseeable future. See *In re L.D.*, No. 119,613, 2019 WL 257979, at *4 (Kan. App. 2019) (unpublished opinion) ("[T]he successful completion of an inpatient program is not the same as successfully beating an addiction to drugs or alcohol. The real test, in the context of these cases, lies in the parent's ability to avoid relapsing after treatment."). The risk of serious relapse seemed to be underscored by C.W.'s failure to stick with a recommended program of outpatient care. Similarly, C.W. had no plan in place to obtain suitable housing and failed to establish stable and sufficient employment at the termination hearing. The record supports the district court's conclusion that C.W.'s unfitness was unlikely to change in the

14

foreseeable future, especially measured in child time for I.W., who was then about six years old.

Finally, C.W. disputes the district court's conclusion that I.W.'s best interests supported termination of his parental rights. Much of what we have already discussed shows why the district court's finding did not amount to an abuse of discretion. I.W. had been in out-of-home placements across the three child in need of care cases for half her life. While she had bonded with C.W. to some degree, it was not an especially strong relationship over time. The record further indicated that I.W. has been traumatized by C.W.'s alcohol abuse and the related neglect of her, and she remains in family counselling as a result. Here, the risk of C.W. relapsing is real, and he has not established that he is in a position to provide suitable housing or financial support for I.W. The hearing evidence also showed that I.W.'s longstanding foster placement was prepared to adopt her, providing continuity and stability for her going forward. The district court understood the governing law and the relevant facts. Taking account of that constellation of circumstances, we conclude other district courts would likewise find that I.W.'s best interests strongly favored termination of C.W.'s parental rights. We see no abuse of judicial discretion in that decision.

Affirmed.